IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| CADLES OF GRASSY MEADOWS II, L.L.C., Successor in interest to Resolution Trust Corporation as Receiver of First Savings of Arkansas, F.A., | § § § § § | |
| | § | CIVIL ACTION NO. H-92-1692 |
| Plaintiff, | § § | |
| V. | § § | |
| WHITNEY NATIONAL BANK, | § § | |
| Garnishee, | § § | |
| V. | § § | |
| DEAN H. MADDOX | § § | |
| Judgment Debtor | § § | |

**MEMORANDUM AND OPINION**

Judgment debtor Dean H. Maddox moved to dissolve a writ of garnishment issued against his Whitney National Bank account. The garnishment was based on the unpaid balance of a judgment entered against him in November 1993. Maddox had entered into a Release and Settlement Standstill Agreement with the judgment holder in April 2000. Under that Agreement, Maddox was to make monthly payments for 65 months totaling $225,000.00. If he failed to pay that amount by the 66th month after the first payment, he was to make a balloon payment of the remaining balance. Paying the $225,000.00 within the 66-month period would result in a release of Maddox's judgment debt. Failing to meet these conditions would make the original judgment payable in full.

Through a series of transactions, on August 4, 2008, the judgment was assigned to the plaintiff, Cadles of Grass Meadows II, LLC. On May 26, 2010, Cadles demanded that Maddox pay the $172,203.00 that remained unpaid out of the $225,000.00. The 66-month period specified in the Release and Settlement Standstill Agreement had expired; Maddox had paid only $37,902.00 as of the expiration of the 66-month deadline; and he had only paid $52,797.00 when Cadles demanded payment. Maddox had made monthly payments in varying amounts after the 66 months ended, a total of $14,895.00 from the expiration of the 66 months to the date of Cadles's demand letter. In response to the May 26, 2010 letter, Maddox failed to pay the outstanding balance. Cadles sought the writ of garnishment.

In his motion to dissolve, Maddox argues that Cadles's continued acceptance of monthly partial payments—in amounts ranging from $260.00 to $315.00 per month—effected a novation of the Release and Settlement Standstill Agreement. Specifically, Maddox argues that because Cadles, as well as other assignees of the judgment, accepted monthly payments after the 66-month period expired without full payment of the $225,000.00, novation resulted. The novation Maddox urges only applied to the part of the Agreement requiring him to pay the entire outstanding balance after 66 months. Maddox argues that this part of the Agreement was replaced with a new provision under which he still only owed a total of $225,000.00 (rather than the full judgment amount plus interest) and he only had to make monthly payments of approximately $500.00 until the $225,000.00 was paid in full, which would take approximately 28 years. Cadles argues that the record makes clear that as a matter of law, no such partial novation of the Agreement occurred. As a result, Cadles asserts that it is entitled to collect the remaining balance of the original judgment plus interest, a sum exceeding five million dollars.

This court held a hearing on the motion to dissolve. Based on the pleadings; the motion and responses; the record; the arguments of counsel; and the applicable law, this court denies Maddox's motion to dissolve the writ of garnishment. There is no novation that would deprive Cadles of its entitlement to the $ 5,301,653.72 unpaid judgment. The reasons for these rulings are set forth in detail below.

**I.      Factual Background**

On November 16, 1993, the federal district court in the Southern District of Texas entered a final judgment in the amount of $2,945,218.00 against Maddox in the case *Resolution Trust Cop. v. Texas Moline, Ltd.*, Civil Action No. H-92-1692.  (Docket Entry No. 47, Ex. A-1, Final Judgment).  In June 1995, Resolution Trust assigned the judgment to JDC Finance Company.  (*Id.*, Ex. A-2, JDC Finance Assignment).  JDC Finance in turn assigned the judgment to Value Recovery Group, Inc. (*Id.*, Ex. A-3, Value Recovery Assignment).  Neither Resolution Trust, JDC Finance, nor Value Recovery succeeded in collecting on the judgment.  (Docket Entry No. 52, ¶ 11).

Maddox and Value Recovery entered into a Release and Settlement Standstill Agreement in April 2000.  (Docket Entry No. 52, Ex. 1-A, Release and Settlement Standstill Agreement). Under the Agreement, Value Recovery released Maddox from all claims and Maddox agreed to pay Value Recovery 10% of all gross funds Maddox received from his company, Maddox Financial Services, on a monthly basis for 66 months, up to $225,000.00.  (*Id.* at ¶¶ 1.b., 2.a.).  Sixty-six months after the first payment, Maddox either had to pay the $225,000 in full (in a balloon payment of the unpaid balance) or the outstanding balance on the original judgment would become due immediately.  (*Id.* at ¶ 2.a.).  The Agreement stated in pertinent part as follows:

> Maddox agrees and promises to pay [Value Recovery] 10% of all gross funds
> Maddox receives from Maddox Financial Services ("MFSI"), on a monthly basis, if

3

> any, up to the total sum of $225,000.00. Such payments will continue unless terminated by prepayment provided for below, until 65 months after the first payment which shall be made on or before the last day of the month following the execution of this Agreement. Such payments will continue and be due, unless terminated by prepayment provided for below, on or before the last day of the month. Should any monies of the total sum of $225,000 still be due 66 months after the first payment, such amount will be immediately due and owing by Maddox to [Value Recovery].

(*Id.*).

Maddox made monthly payments toward the $225,000.00 under the Agreement for the 65 months after it was executed. An outstanding balance of $187,098.00 remained when the 66-month deadline expired, around October 31, 2005. Maddox did not pay the outstanding balance. Instead, he continued to make monthly payments in amounts ranging from $260.00 to $315.00. (Docket Entry No. 52, Ex. 1-B, Payment Record).

The judgment was assigned to Cadles in August 2008.[1] (Docket Entry No. 47, Ex. A-7, Cadles of Grassy Meadows Assignment). In May 2010, Cadles sent Maddox a notice-to-cure letter, consistent with the provisions in the Agreement, stating as follows:

> Should, at any time, [Value Recovery] believe that Maddox is not in compliance with the monetary provisions of this Agreement in 2.a. above, [Value Recovery] shall given written notice, by certified mail, return receipt requested, of the alleged monetary non-compliance to Maddox . . . . Such written notice shall give Maddox ten (10) business days from receipt of the notice letter to cure the alleged non-compliance or provide evidence of compliance. If, and only if, the monetary non-compliance exists and is not cured by the eleventh (11th) business day after Maddox's receipt of the notice letter, then [Value Recovery] shall be released from this standstill agreement to pursue [Value Recovery's] remedies, if any, under judgment entered in the litigation.

---

[1] Value Recovery assigned the judgment to Cadle Company, which in turn assigned the judgment to Cadles of Grassy Meadows II. (Docket Entry No. 47, Ex. A-4, Cadle Company Assignment).

(Docket Entry No. 52, Ex. 1-A, Release and Settlement Standstill Agreement, ¶ 2.b.). In the notice-to-cure letter, Cadles demanded that Maddox pay the $172,203.00 outstanding under the Agreement. Maddox did not pay this amount. He continued to make monthly payments in varying amounts. (Docket Entry No. 52, at 4–5). The last payment shown in the payment record Maddox filed was on August 2, 2010. As of that date, Maddox had paid $53,592.00 out of the $225,000.00. (Docket Entry No. 52, Ex. 1-B, Payment Record).

Cadles applied for a writ of garnishment against Maddox's account with Whitney National Bank in Houston, Texas. (Docket Entry No. 47, Application for Writ of Garnishment). Cadles sought garnishment under the initial judgment, stating that with interest, Maddox owed $5,301,653.72. (*Id*. at ¶ 9). This court ordered the issuance of the writ of garnishment. (Docket Entry No. 48). Maddox moved to dissolve the writ, asserting novation of the balloon-payment obligation of the Agreement and the continued enforceability of the release portions of the same Agreement. (Docket Entry No. 52). Cadles responded, (Docket Entry No. 54), and Maddox replied, (Docket Entry No. 55).

Maddox bases his novation argument on the fact that the assignees, including Cadles, accepted monthly payments after the 66-month period expired in 2005 without demanding payment of either the balance of the $225,000.00 or the full judgment debt until 2010. Maddox argues that by accepting the monthly payments, the assignees agreed to a new agreement under which Maddox would pay approximately $500.00 per month until the $225,000.00 amount under the Agreement was paid in full. Cadles responds that there is no evidence supporting novation and that its actions are consistent with the Agreement's terms. Both parties also requested that the opposing party be

ordered to pay fees and costs associated with these motions. (Docket Entry Nos. 54, at 10; 55, at 3). **II.     The Legal Standard**

"A novation is the substitution of a new agreement between the same parties or the substitution of a new party on an existing agreement." *Honeycut v. Billingsley*, 992 S.W.2d 570, 576 (Tex. App.—Houston [1st Dist.] 1999). "The elements of novation are: (1) a previous, valid obligation; (2) a mutual agreement among all parties to the acceptance of a new contract; (3) the extinguishment of the old contract; and (4) the validity of the new contract." *Vickery v. Vickery*, 999 S.W.2d 342, 356 (Tex. 1999). "It is not necessary that a novation be in writing or that it be evidenced by express words; like any other ultimate fact it may be proved as an inference from the acts and conduct of the parties and other facts and circumstances." *Cohen-sagi v. ProFinance Assocs., Inc.*, No. 04-08-00181-CV, 2009 WL 540217, at *3 (Tex. App.—San Antonio Mar. 4, 2009) (citing *Chastain v. Cooper & Reed*, 257 S.W.2d 422, 424 (Tex. 1953)). "It must clearly appear that the parties intended a novation, and novation is never presumed." *Fulcrum Cent. v. AutoTester, Inc.*, 102 S.W.3d 274, 278 (Tex. App.—Dallas 2003).

**III.    Analysis**

Maddox relies on the conduct of Cadles and other assignees to support his novation claim. He argues that "the acceptance of 40 continued monthly payments over an uninterrupted period of over 3 years" is so inconsistent with the Agreement that a new agreement must have been formed. (Docket Entry No. 52, at 7 (citing *Fulcrum Cent.*, 102 S.W.3d at 277)). Maddox does not point to any words spoken or written by Cadles or the assignees that effected or evidence a novation. Instead, he relies on the acceptance of partial payments after the 66-month period expired without him making the balloon payment as the sole basis for novation.

Under Texas law, it "must clearly appear that the parties intended a novation." *Fulcrum Cent.*, 102 S.W.3d at 277. The actions of Cadles and the previous assignees are not so inconsistent with the Agreement that they demonstrate an intent to rewrite it as Maddox contends. Nothing in the Agreement *required* Cadles or the prior assignees to demand that Maddox make the balloon payment of the outstanding balance 66 months after the Agreement was executed. Paragraph 2.a. of the Agreement states that "[the monthly payments] will continue and be due . . . on or before the last day of the month. Should any monies of the total sum of $225,000.00 still be due 66 months after the first payment, such amount will be immediately due and owing by Maddox . . . ." (Docket Entry No. 52, Ex. 1-A, Release and Settlement and Standstill Agreement, ¶ 2.a.). The Agreement provides further that if, "*at any time*," the judgment-debt holder believes that:

> Maddox is not in compliance with the monetary provisions of 2.a. above, the [judgment-debt holder] shall give written notice . . . of the alleged monetary non-compliance . . . . Such written notice shall give Maddox ten (10) business days from receipt of the notice letter to cure the alleged non-compliance or provide evidence of compliance.

(*Id.* at ¶ 2.b.) (emphasis added). The Agreement allows the judgment-debt holder to demand compliance with the 66-month outstanding balance provision "at any time." The Agreement also requires that before the judgment-debt holder can require Maddox to pay this amount, it must send a written notice of the noncompliance and allow Maddox ten business days after receiving the letter to cure the noncompliance or show that he has complied. Given these provisions, the acceptance by Cadles and the prior assignees did not effect a novation. The delay in demanding that Maddox pay the unpaid balance is not so wholly inconsistent with the Agreement as to demonstrate that Maddox and Cadles or the other assignees intended to effect a novation of any portion of that Agreement.

The terms of the new agreement Maddox argues for are unclear. Maddox argues that under the new agreement, he must pay approximately $500.00 a month. But Maddox has never paid more than $325.00 in any month since October 2004. And it is unclear where Maddox derived the "approximately $500.00 a month" payment rate that he asserts was the result of the parties' novation. (Docket Entry No. 52, Ex. 1-B, Payment Record). The lack of clarity as to the provisions of the new "agreement" further demonstrates that the parties did not intend a novation.

Maddox also argues that some, but not all, terms of the original Agreement are part of the new agreement he asserts resulted from novation. He argues that the Agreement's provision preventing Cadles from taking any action to "enforce, collect on, obtain writs of execution, attempt to garnish, attach or otherwise use any judgment entered in [the] litigation" still applies, as well as the full release of the judgment, while the provisions requiring him to pay the full amount of the judgment if he has failed to pay $225,000 within 66 months are extinguished. (Docket Entry No. 52, Ex. 1-A, Release and Settlement and Standstill Agreement, ¶ 2.a.). There is no evidence to support this partial novation argument.

To the extent Maddox's argument is more akin to laches than novation, it still fails. "Laches is an affirmative defense akin to estoppel." *Ustanik v. Nortex Found. Designs, Inc.*, No. 10-09-00272-CV, 2010 WL 2404453, at *3 (Tex. App.—Waco June 16, 2010) (citing *Ft. Worth v. Johnson*, 388 S.W.2d 400, 403 (Tex. 1964)). "The two essential elements are (1) unreasonable delay by one having legal or equitable rights in asserting them, and (2) a good-faith change of position by another to his detriment because of the delay." *Id.* (citing *Johnson* 388 S.W.2d at 403; *Caldwell v. Barnes*, 975 S.W.2d 535, 538 (Tex. 1998)). Maddox's argument fails under laches because he fails to show either an unreasonable delay by Cadles in demanding the outstanding balance or any

detrimental change in his own position caused by the delay. To the contrary, if anything, Cadles's delay put Maddox in a better position by allowing him to delay payment.

Maddox's motion to dissolve the writ of garnishment is denied. Maddox owes the full judgment debt.

**IV.     The Fee Requests**

Both parties have sought fees. Because Maddox's arguments have failed, he has no basis to recover the fees he incurred in seeking to dissolve the writ of garnishment. Cadles bases its fee request on Rule 11 of the Federal Rules of Civil Procedure. Rule 11 generally requires an attorney to conduct a reasonable inquiry into the relevant law and facts before signing pleadings, written motions, or other documents, and it prescribes sanctions for violations of these obligations. FED. R. CIV. P. 11(a)–(c). Rule 11 "prohibits filings made with 'any improper purpose,' the offering of 'frivolous' arguments, and the assertion of factual allegations without 'evidentiary support' or the 'likely' prospect of such support." *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005). A filing must be accompanied by a certification "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," the filing does not violate one of the Rule 11 prohibitions. FED. R. CIV. P. 11(b). A legal argument is not frivolous if warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law. FED. R. CIV. P. 11(b)(2). Rule 11(c)(2) also requires that the party seeking sanctions must provide a "safe harbor" notice by moving for sanctions separately from any other motion and serving the Rule 11 motion on the opposing party at least 21 days before filing the motion with the district court. Sanctions may only be sought if the offending filing is not withdrawn or corrected within 21 days after service of the

motion. FED. R. CIV. P. 11(c)(1)(A). Cadles stated during the oral argument that it complied with the safe-harbor notice requirement and Maddox did not controvert this statement. However, there is no separate motion on record, as Rule 11(c)(2) requires, and no evidence to support the fees Cadles seeks. Based on the current record, the fee request is denied, without prejudice.

**IV.     Conclusion**

Maddox's motion to dissolve the garnishment is denied. Based on the record, Maddox is obligated to pay the full outstanding balance of the November 16, 1993 judgment, $5,301,653.72.

SIGNED on October 8, 2010, at Houston, Texas.

Lee H. Rosenthal
United States District Judge

.